Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Nowles H. Heinrich
Assistant United States Attorneys
Post Office Box 1494
Spokane, Washington 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-CR-00047-TOR-1, 2 |
| Plaintiff, | United States' Response to Defendant's Motion to Suppress Physical Evidence |
| v. | |
| ERUBEY ARCIGA MEDRANO (a/k/a "Wheto"), LUIS ESQUIVEL-BOLANOS (a/k/a "Colorado"), | |
| Defendants. | |

Defendant Erubey Arciga Medrano (herein "Medrano") has filed a motion to suppress physical evidence. ECF No. 234. Medrano also requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). ECF No. 234 at 10. Medrano's claims lack legal and factual merit, and the motion should be denied. Co-defendant Luis Esquivel-Bolanos (herein "Bolanos") has filed a "Notice of Joinder to Co-Defendant Medrano's Motion to Suppress." ECF No. 235. Bolanos's "notice" makes no factual allegations and should also be denied.

United States' Response to Defendant's Motion to Suppress - 1

## I. Statement of Facts

The defendants are charged by Superseding Indictment with multiple drug offenses and a firearm offense. ECF No. 218. The charges are the result of an investigation that began around January 2023, when the Bureau of Indian Affairs ("BIA") identified defendant Medrano as a leader/organizer of a drug trafficking organization operating in the Orville, Washington area, as well as on the Colville Indian Reservation in Washington and the Crow Indian Reservation in Montana. The investigation revealed that Medrano and his father, Virgilio Arciga Galvan, were engaged in the large-scale distribution of methamphetamine and fentanyl.

During the investigation, BIA, the Drug Enforcement Administration ("DEA"), Washington State law enforcement, and Colville Tribal law enforcement conducted a series of controlled buys, beginning in January 2023 through March 2023, from Medrano, Co-Defendant Bolanos, and other co-defendants selling drugs on their behalf. During some of the controlled buys, the confidential informant called a phone number associated with Medrano to arrange the transaction. Other times, the informant travelled to 24 Swanson Mill Road to purchase controlled substances. This location was a plot of land containing three mobile homes and various outbuildings. For some of the controlled buys not occurring at the Swanson Mill Road location, video surveillance from a pole camera showed that the person who provided the drugs to the confidential informant had come from 24 Swanson Mill Road prior to the transactions and returned to the location after conducting the transaction.

United States' Response to Defendant's Motion to Suppress - 2

Additional surveillance, information gleaned from court-authorized eavesdropping by federal authorities in Montana, and information from other confidential informants further established that the three mobile homes at 24 Swanson Mill Road were connected to the drug trafficking organization. The investigation also connected two "picker cabins" that were a 10-15 minute drive away, to the drug trafficking organization.

After obtaining arrest warrants and search warrants, a takedown occurred on April 19, 2023, in both the District of Montana and the Eastern District of Washington. As a result of the takedown, numerous pounds of methamphetamine, fentanyl, and other drugs were seized from property associated with Medrano, Galvan, Bolanos, and others. On the morning of the takedown Medrano was arrested at 24-A Swanson Mill Road and Bolanos was arrested at the Northern Quest casino.

Medrano's motion, which Bolanos has joined, seeks to suppress seven federal search warrants. The relevant warrants are as follows:

- 23-MJ-00168-JAG – A warrant authorizing the search of 24 Swanson Mill Road in Oroville, Washington. This was a single wide mobile home and the alleged residence of Medrano. This location was sometimes referred to as "24-A Swanson Mill Road."

- 23-MJ-00169-JAG – A warrant authorizing the search of 24-B Swanson Mill Road in Oroville, Washington. This was a single wide mobile home located on the same plot of land as Medrano's alleged mobile home.

- 23-MJ-00170-JAG – A warrant authorizing the search of 24-C Swanson Mill Road in Oroville, Washington. This was another single wide mobile home located on the same plot of land as the above two locations.

United States' Response to Defendant's Motion to Suppress - 3

- 23-MJ-00171-JAG – A warrant authorizing the search of two small "picker cabins" located at 1519 Highway 7 in Oroville, Washington.

- 23-MJ-00177-JAG – A warrant authorizing collection of location information records for a cell phone allegedly used by Medrano.

- 23-MJ-00178-JAG – A warrant authorizing collection of location information records for a second cell phone allegedly used by Medrano.

- 23-MJ-00180-JAG – A warrant authorizing a second search of the three mobile homes located at 24-A, and 24-B, and 24-C Swanson Mill Road in Oroville, Washington, as well as outbuildings and surrounding land.

Law enforcement also obtained additional search warrants during the investigation, including a warrant for the collection of location information for a cell phone allegedly used by Bolanos as well as a warrant authorizing the search of a Chevy Suburban in which Bolanos had arrived at the Northern Quest casino prior to his arrest. Neither Medrano nor Bolanos have challenged these warrants. ECF Nos. 234 at 1; 235.

**II.  Defendant's Motion to Suppress and for a *Franks* Hearing Should be Denied**

Medrano seeks to suppress all evidence seized pursuant to the seven warrants detailed above. Specifically, Medrano alleges that the warrant applications contain misrepresentations or omissions, and he therefore requests a *Franks* hearing. Although Medrano alleges "that the purported bases for probable cause is quite thin," (ECF No. 234 at 10) it does not appear he is alleging that the search warrant applications lack probable cause, absent a successful *Franks* challenge.

United States' Response to Defendant's Motion to Suppress - 4

Medrano and Bolanos's challenges to the seven search warrants must fail. As an initial matter, both defendants lack standing to challenge many of the search warrants because they have not established they had a reasonable expectation of privacy as to many of the locations and electronic data covered by the warrants. Furthermore, even if Medrano and Bolanos had standing, their allegations are legally and factually without support and their motion for a *Franks* hearing should be denied in its entirety without the need for a hearing.

**A. Medrano and Bolanos Lack Standing as to Many of the Warrants**

The person challenging the fruits of a search must have a legitimate expectation of privacy in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *Minnesota v. Carter*, 525 U.S. 83, 88 (1994) (in *Rakas*, "we held that in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable"); *United States v. Salvucci*, 448 U.S. 83 (1980) (defendant charged with possession of stolen mail lacked standing to challenge warrant used to search apartment of co-defendant's mother).

The burden of establishing standing lies with the person challenging a search. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). Defendant Bolanos made no factual allegations in his "Notice of Joinder" and the search warrant affidavits provide him with no factual support. Accordingly, he lacks standing to challenge all the warrants listed in co-defendant Medrano's motion. Medrano also fails to allege any facts in his

United States' Response to Defendant's Motion to Suppress - 5

motion that would establish standing. Many of the warrant applications, such as for the picker cabins, and 24-B and 24-C Swanson Mill Road also do not provide Medrano with standing for the respective locations. Thus, Medrano, at most, has standing to challenge only four of the relevant search warrants.

        1. <u>Warrants for cell phone location information records</u>

Medrano seeks to suppress information seized pursuant to two federal warrants (23-MJ-00177-JAG and 23-MJ-00178-JAG ) that granted the seizure of location information related to two cell phones allegedly used by Medrano. Bolanos also joined in this request although there was no allegation in the warrant applications or the pleadings that Bolanos used either of the cell phones covered by the challenged warrants. Thus, Bolanos certainly lacks standing, and his challenges to 23-MJ-00177-JAG and 23-MJ-00178-JAG must fail.

As to Medrano, he also fails to establish an expectation of privacy in the location data from the two devices covered by the two warrants. However, because the warrant applications allege that both phones were used by Medrano and one of the target phones was registered in his name, the United States will respond to the substance of Medrano's allegations as to the two warrants, should the Court decide that Medrano has standing.

        2. <u>Warrant for the "picker cabins"</u>

Medrano, and by extension Bolanos, also challenges search warrant 23-MJ-00171-JAG, which authorized the search of two small "picker cabins" in Oroville. The

United States' Response to Defendant's Motion to Suppress - 6

warrant application alleged the defendants' drug trafficking organization used these cabins to store controlled substances, but there was no allegation in the warrant affidavit or defendants' pleadings that either Medrano or Bolanos resided at the cabins, owned or rented the cabins, or even had lawful access to the cabins. Indeed, it was because they lacked a clear possessory interest in these cabins that Medrano and Bolanos used them to store drugs and weapons. While this was arguably a wise strategic move in the drug trafficking realm, it is fatal to any claim of standing by the two defendants.

Nor do the defendants have any "automatic standing" as to the cabins, as there is no "automatic standing" rule. *Salvucci*, 448 U.S. at 85 ("Today we hold that defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated. The automatic standing rule of *Jones v. United States*, [362 U.S. 257 (1960)] is therefore overruled."); s*ee also United States v. Padilla*, 508 U.S. 77 (1993) (defendant charged with conspiracy does not have automatic standing to challenge evidence simply because he is a member of the conspiracy).

Accordingly, the challenges to 23-MJ-00171-JAG must be denied because neither defendant has standing to challenge the search of the cabins.

3. <u>Warrants for 24 Swanson Mill Road</u>

The DEA/BIA obtained four search warrants for the 24 Swanson Mill Road property. Warrant 23-MJ-00168-JAG related to 24 Swanson Mill Road, which was

United States' Response to Defendant's Motion to Suppress - 7

subsequently referred to as "24-A Swanson Mill Road" in a later warrant. The warrant covered a single wide trailer on the property, as well as the curtilage, any campers/RVs on the property, and any vehicles owned by Medrano or registered to his father Galvan. The affidavit for this search warrant alleged that Medrano resided at the location and he was arrested in the trailer during execution of the warrant. Thus Medrano, but not Bolanos, may have standing to challenge this warrant.

Warrant 23-MJ-00169-JAG authorized a search of 24-B Swanson Mill Road, including a single wide trailer on the property, as well as the curtilage, any campers/RVs on the property, and any vehicles owned by Medrano or registered to Galvan. The warrant application established that the drug trafficking organization used the location to distribute drugs, but the application did not allege that either Medrano or Bolanos resided at the location or otherwise had an expectation of privacy at the location.  Nor has either defendant alleged facts in their pleadings that would establish standing. A substantial amount of fentanyl, methamphetamine, heroin, and cocaine, along with a number of firearms, was recovered from the trailer during execution of the warrant.

Warrant 23-MJ-00170-JAG authorized a search of 24-C Swanson Mill Road, including a single wide trailer on the property, as well as the curtilage, any campers/RVs on the property, and any vehicles owned by Medrano or registered to Galvan. The application alleged that Medrano's father, Virgilio Arciga Galvan, resided at this residence, but did not allege that either Medrano or Bolanos resided at

the location, were overnight guests, or otherwise had an expectation of privacy at the location.  Neither defendant alleged facts in their pleadings that would establish standing.

Although some items of potential evidentiary value were seized from the trailer at 24-C Swanson Mill Road, the most significant recovery was the seizure of 1.8 kilograms of heroin and approximately 59,000 fentanyl-laced pills buried in the ground under a shed approximately 30-50 feet away from the trailer. Even if Medrano or Bolanos had standing to challenge the search of the trailer itself, they would not have standing to challenge the search of this storage shed. *See United States v. Brady*, 993 F.2d 177 (9th Cir. 1993) (district court's finding that outbuilding, which was 45 feet from house, was not within protected curtilage of defendant's house was not clearly erroneous).

During the takedown on April 19, 2023, law enforcement recovered a substantial quantity of controlled substances and multiple weapons from the picker cabins, from 24-B Swanson Mill Road, and buried under a shed at 24-C Swanson Mill Road. Warrant 23-MJ-00180-JAG was obtained after the initial search because law enforcement learned that additional drugs and/or money may be buried on the property. The warrant sought to search the property surrounding 24-A, 24-B, and 24-C Swanson Mill Road and seize Medrano's cell phone from the location. No additional contraband was located during the second search and the United States will not be seeking to introduce any evidence seized during the second search. Accordingly,

United States' Response to Defendant's Motion to Suppress - 9

Medrano's motion is moot as to warrant 23-MJ-00180-JAG. Bolanos's motion is also moot and regardless, he lacks standing to challenge this warrant.

In summary, Bolanos lacks standing to challenge all the search warrants listed in co-defendant Medrano's motion. Bolanos made no factual allegations of his own and the search warrant affidavits make no assertions that would provide Bolanos with standing. Medrano also failed to sufficiently claim standing in his motion. Accordingly, Medrano, at most, has standing to challenge only four of the warrants: 23-MJ-00177-JAG (location information for cell phone), 23-MJ-00178 (location information for a second cell phone), 23-MJ-00168-JAG (24 Swanson Mill Road, aka 24-A Swanson Mill Road) and 23-MJ-00180-JAG (second search of 24-A Swanson Mill Road and adjacent properties). To the extent Medrano has standing as to these search warrants, his motion is still without merit and must be denied.

**B. Probable Cause Existed for Issuance of the Warrants**

The magistrate judge correctly found that the search warrant applications established probable cause. The applications detailed an extensive and thorough investigation involving surveillance, multiple controlled buys, court-authorized eavesdropping, and interviews with multiple sources of information.

1. <u>Warrants for cell phone location information records</u>

As to the two search warrants for location information for Medrano's two cell phones, the applications established that one of the phones was registered in Medrano's name (ECF 234-1 at 4, ¶ 3) and law enforcement captured Medrano using

United States' Response to Defendant's Motion to Suppress - 10

both phones pursuant to court-authorized eavesdropping conducted by law enforcement in Montana (*id.* at 13-14, ¶¶ 23-27). The applications also established that Medrano had not only distributed methamphetamine to a confidential informant (*id.* at 16, ¶ 33), but had personally arranged another transaction (*id.* at 16-18, ¶¶ 35-37). The applications also cited detailed intelligence from a different confidential source that corroborated Medrano's involvement in drug trafficking. *Id.* at 12-13, ¶¶ 14-16. Thus, there was ample probable cause to believe that Medrano was involved in drug trafficking and used both target cell phones. Thus, there was clearly probable cause to believe that location information from the two phones would assist law enforcement in their investigation.

        2. <u>Swanson Mill Road and "picker cabins"</u>

The search warrants for the Swanson Mill Road locations and the "picker cabins" were all supported by sufficient probable cause. All the applications detailed the extensive federal investigation that connected the locations to the drug trafficking targets and drug trafficking activity. The applications made clear that both Medrano and Galvan were involved in drug trafficking and resided at 24-A and 24-C Swanson Mill Road, respectively. Accordingly, there was probable cause for issuances of warrants to search the properties. The affidavit for 24-B Swanson Mill Road also detailed the drug transactions that had occurred at the location and demonstrated that the individuals selling drugs on behalf of Medrano and Bolanos were frequently

United States' Response to Defendant's Motion to Suppress - 11

observed coming from 24-B prior to the transactions and returning to the location immediately after the transactions.

The application for the warrant authorizing the search of the "picker cabins" also detailed their connection to Medrano's drug trafficking organization. This included confidential sources who had delivered substantial quantities of drugs to the cabins (ECF 234-3 at 10-11, ¶ 11) and surveillance showing items being moved from Swanson Mill Road to the cabins (*id.* at 27-28, ¶¶ 60-62). Furthermore, the application established that surveillance revealed Galvan's vehicle parking at the picker cabins. *Id.* at 28, ¶ 64.

**C. Defendants are Not Entitled to a *Franks* Hearing**

The defendants have not established that they are entitled to a *Franks* hearing. Under *Franks*, a search warrant must be voided and the fruits of the search excluded only if a defendant shows that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Defendant Medrano's allegations regarding false statements are without merit. Furthermore, Medrano does not establish that the alleged false statements or omissions were necessary for the finding of probable cause, and accordingly his motion must be denied.

Medrano alleges that the affiants of the search warrants made three categories of false or misleading statements or omissions:

United States' Response to Defendant's Motion to Suppress - 12

First, Medrano claims the affidavits falsely assert that during a controlled buy on January 25, 2023, co-defendant Bolanos was acting as an interpreter and Medrano, through the interpreter, was threatening the informant. ECF No. 234 at 6-7.

Second, Medrano alleges that the warrants should have disclosed additional impeachment information regarding a confidential informant who conducted a single controlled buy during the investigation. *Id.* at 7.

Third, Medrano argues that the affidavits "do not provide information reflecting that Mr. Medrano's other family members, but not him, were involved in drug distribution.

Reviewing courts normally do not "'flyspeck' the affidavit supporting a search warrant through de novo review; rather, the magistrate judge's determination should be paid great deference." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (*citing* and quoting *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) and *Illinois v. Gates*, 462 U.S. 213 (1983)). Medrano's arguments fail to satisfy either of the two *Franks* prongs and do not present a close call. However, even if they did, "[i]n borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." *United States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir. 1987); *see Gates*, 462 U.S. at 237 n.10 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)) ("Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants.").

United States' Response to Defendant's Motion to Suppress - 13

If a district court grants a *Franks* hearing, the defendant "must establish both [*Franks*] prongs by a preponderance of the evidence." *United States v. Norris*, 942 F.3d 902, 910 (9th Cir. 2019) (*citing United States v. Martinez-Garcia*, 397 F.3d 1205, 1214-15 (9th Cir. 2005)). To satisfy the first *Franks* prong, "the defendant must show by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, made false or misleading statements or omissions in support of the warrant application." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (*citing Martinez-Garcia*, 397 F.3d at 1214). Notably, "[a] negligent or innocent mistake does not warrant suppression." *Perkins*, 850 F.3d at 1116 (citing *Franks*, 438 U.S. at 171).

To satisfy the second *Franks* prong, "the question is whether the omitted fact is 'material'; that is, whether it is 'necessary to the finding of probable cause.'" *Perkins*, 850 F.3d at 1119 (quoting *Franks*, 438 U.S. at 156). Probable cause, in turn, means that "there is fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 213. That standard "is not terribly demanding," *United States v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005), and does not impose "a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

In determining materiality, "[t]he key inquiry is 'whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions.'" *Perkins*, 850 F.3d at 1119 (quoting *United States v. Ruiz*, 758 F.3d 1144, 1149 (9th Cir. 2014)). "If probable cause remains, the defendant has failed

United States' Response to Defendant's Motion to Suppress - 14

to establish a material omission." *Norris*, 942 F.3d at 910 (*citing Perkins*, 850 F.3d at 1119).

As noted above, Medrano claims that three topics were false/misleading or omitted from the search warrant applications: co-defendant Bolanos's role in the January 25th controlled buy and accuracy of the interpretation, the absence of additional impeachment information regarding the March 7th controlled buy, and downplaying of the involvement of Medrano's family members in drug trafficking. As detailed below, these three claims are without merit. Defendant's *Franks* argument should be denied because the affiants did not knowingly and intentionally, or with reckless disregard for the truth, make false or misleading statements or omissions. Furthermore, even if Medrano's allegations were true, the information was immaterial to the probable cause determinations.

First, Medrano's arguments regarding the January 25th controlled buy do not warrant a *Franks* hearing. Medrano is correct that an initial translation of the January 25th controlled buy, which was relied upon by both affiants to the search warrants, contained mistakes. After further review of the audio recording of the buy, months after the search warrants were executed, law enforcement determined that co-defendant Bolanos was not the individual interpreting English for Medrano during the controlled buy. Around this time, additional review of the recordings also revealed that the interpreter had been embellishing certain statements that Medrano directed towards the informant. This information was promptly provided to the defense.

United States' Response to Defendant's Motion to Suppress - 15

While Medrano is correct that these mistakes occurred, they are not sufficient to satisfy the first *Franks* prong. The above mistakes were not the fault of either of the affiants to the search warrants. Neither Special Agents Darya Aziz (affiant as to the warrants for cell phone location information) or Cody SiJohn (affiant as to the remaining search warrants) speak Spanish. They did not conduct the translations at issue. Rather, they in good faith relied upon translations conducted by another agent. Similarly, they also relied upon the agent's report purporting to identify Bolanos in the audio recording. Accordingly, the two affiants had no reason to know of the mistaken translation or misidentification of Bolanos.

While there were undoubtedly mistakes in some portions of the translation from the January 25th controlled buy, Medrano is wrong when he suggests he did not threaten and intimidate the informant. Medrano's motion ignores that Medrano repeatedly emphasized to the informant that a lot of people were claiming the informant was a "rat." While this was happening, the informant was nearly strip searched and also acknowledged that being an informant could be fatal. This was interpreted back to Medrano and he made no effort to correct the informant's statement.

Lastly, Medrano ignores the most important aspect of the January 25th controlled buy remains true and unchallenged—Medrano provided the informant with over 20 grams of methamphetamine. Thus, regardless of the nature of the threats and the identity of the translator, the controlled buy established probable cause to believe

United States' Response to Defendant's Motion to Suppress - 16

that drugs were being distributed from 24-B Swanson Mill Road and that Medrano was personally involved in their distribution. Accordingly, Medrano's argument also fails to satisfy the second *Franks* prong because the incorrect information included in the affidavit, when omitted, does not negate the existence of probable cause.

Next, Medrano argues that the search warrant applications should have disclosed additional details regarding a confidential informant (referred to in the applications as "CS-3") who conducted just one controlled buy during the investigation. *Id.* at 7. Specifically, Medrano faults the affiants for omitting that CS-3 knew Medrano and his family well and for omitting that CS-3 had a gambling debt.

While noting that CS-3 knew Medrano well could arguably have strengthened the search warrant applications, the failure to include this information is not the type of omission that satisfies the first *Franks* prong. Similarly, because it lacks materiality, it also fails to satisfy the second *Franks* prong. As to the alleged gambling debt, assuming that the affiants even knew about CS-3's gambling debts, the information is insufficient to warrant a *Franks* hearing. The search warrant applications disclosed that CS-3 was being financially compensated for their cooperation. ECF No. 234-3 at 22, ¶ 45. Disclosing an informant's motivation for cooperating, which was done in the present case, is all that is required. When an informant is being financially compensated, it is immaterial how the informant is spending their proceeds. Accordingly, the failure of the affiants to recite the details of CS-3's personal finances is insufficient to justify a *Franks* hearing.

United States' Response to Defendant's Motion to Suppress - 17

Medrano's last argument as to CS-3 is a single sentence claiming that the affidavits incorrectly allege Medrano was involved in the March 7th controlled buy. Medrano does not elaborate on this claim and does not appear to contest the discovery detailing that Medrano arranged the transaction. This baseless assertion, without more, is insufficient to warrant to *Franks* hearing.

The last subject matter of Medrano's *Franks* argument focuses on his family's involvement in drug trafficking. Specifically, Medrano claims that "[t]he warrant applications also do not provide information reflecting that Mr. Medrano's other family members, but not him, were involved in drug distribution." ECF No. 234 at 7. This assertion is refuted by the warrants attached to Medrano's own motion. The warrant affidavits reveal that Medrano's father was extensively involved in drug trafficking. In fact, Galvan's name appears over thirty times in a single affidavit. *See, e.g.*, *id.* at ¶¶ 11, 13, 16, 43, 59. The application also cites information regarding Medrano's brother, Arturo Arciga Galvan. *Id.* at 11, ¶ 11. Accordingly, the affidavits made abundantly clear that Medrano's family was also involved in drug trafficking. Nor does Medrano specify what information he learned from the discovery that should have been disclosed in the affidavits.

Medrano also alleges that his name does not appear in the discovery related to the District of Montana's investigation. This is incorrect. The mistake is likely linked with Medrano's incorrect assertion that law enforcement has confused Medrano with another suspect named "Guero." *See* ECF No. 234 at 7. However, as detailed in the

United States' Response to Defendant's Motion to Suppress - 18

discovery, Guero is another of Medrano's nicknames. Accordingly, Medrano's claim is contradicted by documentary evidence.

In summary, Medrano has failed to satisfy the first *Franks* prong because he has not established that either affiant knowingly and intentionally, or with reckless disregard for the truth, made a false or misleading statement or omission in support of the warrant applications. Nor can Medrano satisfy the second *Franks* prong because the warrant applications are supported by sufficient probable cause even if the challenged portions are removed. *See Perkins*, 850 F.3d at 1119 (noting that in determining materiality "[t]he key inquiry is 'whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions'") (quoting *United States v. Ruiz*, 758 F.3d 1144, 1149 (9th Cir. 2014)).

### Conclusion

Defendant Erubey Arciga Medrano has filed a motion to suppress. Co-defendant Luis Esquivel-Bolanos has filed a "Notice of Joinder." The motions lack legal and factual support and the United States requests that the motions be denied.

Dated:  July 29, 2024

                              Vanessa R. Waldref
                              United States Attorney

                              *s/Richard R. Barker*
                              Richard R. Barker
                              First Assistant United States Attorney

                              *s/Nowles H. Heinrich*
                              Nowles H. Heinrich
                              Assistant United States Attorney

United States' Response to Defendant's Motion to Suppress - 19

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

        Matthew F. Duggan, Esq.,
        Thomas D. Church, Esq.,
        David M. Miller, Esq.

                              *s/Nowles H. Heinrich*
                              Nowles H. Heinrich
                              Assistant United States Attorney